IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR BRAUN, ANDREA BRAUN, AND THE OSCAR A. BRAUN TRUST DATED 1996,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN MATEO,<br><br>Defendant._____/ | No. C 03-03415 MEJ<br><br>**ORDER ON PLAINTIFFS' MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT** |

## I.   INTRODUCTION

Pending before the Court is Plaintiffs Oscar Braun, Andrea Braun, and the Oscar A. Braun Trust Dated 1996's Motion for Enforcement of Settlement Agreement (Dkt. #268).  Defendant County of San Mateo has filed an Opposition (Dkt. #271), to which Plaintiffs filed a Reply (Dkt. #273).  For the reasons set forth below, the Court DENIES Plaintiffs' Motion.

## II.   BACKGROUND

Plaintiffs initiated this action by filing a Complaint for Violation of Civil Rights against the County on July 22, 2003.  (Dkt. #1.)  Plaintiffs thereafter filed their First Amended Complaint on September 4, 2003.  (Dkt. #11.)  Briefly stated, Plaintiffs alleged that, in retaliation for their criticism of the County's policies and practices, the County discriminated against them in violation of their constitutional rights.  In particular, Plaintiffs alleged that the County denied certain permit

applications relating to their property, which severely diminished the value of the property and caused them to lose lucrative contracts relating to its use.

On October 26, 2005, the case proceeded to trial before Judge Martin Jenkins. (Dkt. #246.) On November 1, 2005, Magistrate Judge Bernard Zimmerman held a settlement conference with the parties. (Dkt. #251.) That night, the parties reached a settlement, which Judge Zimmerman put on the record. The Court issued an Order of Conditional Dismissal on January 30, 2006. (Dkt. #258.) Subsequently, the parties reduced the terms of the settlement to writing and executed the operative Settlement Agreement on September 6, 2006. (Dkt. #265, "Declaration of Brad Yamauchi in Support of Motion for Enforcement of Settlement Agreement" ("Yamauchi Decl."), Ex. B.)

On March 31, 2008, Plaintiffs filed the instant Motion for Enforcement of Settlement Agreement. (Dkt. #264.) After the matter was reassigned, Plaintiffs re-noticed the instant Motion on April 11 2008. (Dkt. # #267, 268.) Since the filing of the Motion, the Court has held status conferences on December 1, 2008, and January 29, 2009.[1]

### III. DISCUSSION

**A.   Legal Standard**

In the Ninth Circuit, "[i]t is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir.1987); *see In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). To be enforced, a settlement agreement must meet two requirements. First, it must be a complete agreement. *See Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994); *Callie*, 829 F.2d at 890. Second, both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977).

In considering a party's request to enforce the terms of a settlement agreement, courts treat the settlement agreement like any other contract for purposes of interpretation. *See United*

---

[1] Before the status conferences, the parties filed status reports, which the Court has also considered in ruling on this Motion. (Dkt. ##290, 291, 296.)

*Commercial Ins. Serv., Inc. v. The Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). "Under California law, the intent of the parties determines the meaning of the contract. The relevant intent is 'objective' - that is, the intent manifested in the agreement and by surrounding conduct-rather than the subjective beliefs of the parties." *Id*. (citations omitted). If the material facts concerning the existence or terms of the settlement agreement are in dispute, the court must hold an evidentiary hearing. *Callie*, 829 F.2d at 890.

In this matter, neither party is disputing the validity or enforceability of the Settlement Agreement. Thus, the Court turns to Plaintiffs' request to enforce specific terms of the Agreement.

### B.     **Plaintiffs' Requested Relief**

In their Motion, Plaintiffs contend that the County has failed to implement three of its obligations under the Settlement Agreement. First, Plaintiffs charge that the County has failed to issue building and environmental health permits to clear Plaintiffs' property of certain code violations. Second, Plaintiffs assert that the County has failed to issue a non-appealable, property-wide Coastal Development Permit ("CDP") for wireless antennae on their property. Third, Plaintiffs assert that the County has failed to timely initiate a study of the feasibility of incorporating rural areas into the County. Based on these purported breaches of the Settlement Agreement, Plaintiffs assert that they have suffered damages and are entitled to immediate relief. Specifically, they request that the Court: (1) issue an order finding the County in contempt of court for failure to time comply with the Settlement Agreement; (2) order the County to immediately issue the environmental health and building permits and a CDP that is not appealable, and fund and initiate the study by Controller Huening, or alternatively, issue an order setting a 45-day timetable to do so with enforcement or non-compliance sanctions if it fails to do so; (3) sanction the County for the amount of out-of-pocket expenses, attorneys' fees and costs and other proven damages to Plaintiffs created by the County's failure to comply with the Settlement Agreement; (4) assess emotional distress damages to Plaintiffs in an amount deemed reasonable and appropriate; (5) issue an order to show cause requiring the County to show cause why it has not complied with the settlement agreement; and (6) order any other sanctions or relief the Court finds appropriate. (Mot. at 11.)

The Court will address Plaintiffs' arguments relating to the breaches of the Settlement Agreement first, and then address Plaintiffs' requests for damages and other relief.

**C.     Issuance of Building and Environmental Health Permits**

Plaintiffs first contend that the County failed to issue building and environmental health permits in accordance with paragraphs 5 through 7 of the Settlement Agreement. (Mot. at 6.) These paragraphs provide:[2]

> 5. The Releasors shall select a person or persons to serve as the final decision makers (the "Third Parties") charged with implementing compliance with the terms of the Settlement agreement dated June 25, 2004, between the parties entitled <u>Half Moon Bay Coastside Foundation et al. County of San Mateo</u>, County of San Mateo Superior Court Case No. CIV 426174. The Releasors shall notify Michael Murphy, attorney for Releasees, of their selection, and Mr. Murphy shall have five days to approve or disapprove of the Third Party selected by Releasors. If the fifth day falls on a weekend or holiday, Mr. Murphy shall have until the next succeeding working day to approve or disapprove of the Third Parties.
>
> 6. The Third Parties shall make a final decision with regard to the environmental health and building permits within ninety (90) days of the effective date of this Settlement Agreement. In coming to a decision, the Third Parties shall use the terms of the Settlement Agreement in the action entitled <u>Half Moon Bay Coastside Foundation et al. County of San Mateo</u>, County of San Mateo Superior Court Case No. CIV 426174. The intent of this Third Party process is to reach expeditiously a final decision on legalization of the structures at issue.
>
> 7. The County of San Mateo shall bear the costs of any additional investigations or tests that the Third Party concludes are required to reach a decision with respect to the terms of the Settlement Agreement in the action entitled <u>Half Moon Bay Coastside Foundation et al. v. County of San Mateo</u>, County of San Mateo Superior Court Case No. CIV 426174. Third Parties shall arrange with the Releasors, directly or through Oscar or Andrea Braun's designated representative or attorney, for access to the property as necessary to carry out the Third Party's responsibilities.

(Yamauchi Decl., Ex. B at 3-4.) At the time Plaintiffs filed their Motion, they argued that the County had yet to contract with the "Third Parties" Plaintiffs nominated, namely, the environmental health permit consultant, Anne Jensen, and the building permit consultant, Steve Davis. (Mot. at 7.)

---

[2]In the Settlement Agreement, the County, along with certain other individuals, are referred to as the "Releasees." (Yamauchi Decl., Ex. B at 1.) Plaintiffs are referred to as the "Releasors." (*Id.*)

Plaintiffs charge that, based on their discussions with Ms. Jensen and Mr. Davis, the County unreasonably delayed contacting the Third Parties and then employed "artificial barriers" to prevent them from starting their review, such as requiring the Third Parties to obtain indemnity insurance and failing to provide the Third Parties with the proper documents for their work. (Mot. at 7.) As a result, Plaintiffs assert that the environmental health and building permits have not been issued, which has affected their ability to refinance or sell their property.[3] (Reply at 3.)

In their Opposition, the County does not dispute that Plaintiffs selected Ms. Jensen and Mr. Davis to serve as the Third Parties pursuant to paragraph 5. However, the County explains that, despite their efforts to communicate with Ms. Jensen and Mr. Davis, problems arose, including issues surrounding Ms. Jensen and Mr. Davis obtaining the proper insurance to serve as consultants and their failure to respond to the County's email and phone calls, all of which delayed the County from complying with paragraph 5. (Opp. at 8.) Thus, the County asserts that any delay was not due to lack of diligence on their part, but was the result of complications stemming from the unusual nature of the project.[4] (*Id.*)

---

[3] Specifically, Plaintiffs assert that without permits for the water system and structures on their property, they were unable to sell or refinance the property, and ultimately were unable to pay their mortgage and faced foreclosure. (Reply at 3.) Plaintiffs also contend that the tenant on the property "has suffered severe emotional distress and harm for over six years now in not being able to live peacefully and conveniently in his home." (Motion at 7.) The tenant, however, is not a party to the Settlement Agreement and Plaintiffs fail to offer any explanation of their standing to seek damages based on their tenant's alleged injuries.

[4] For instance, with respect to Mr. Davis, the County indicates that it began corresponding with Mr. Davis in February 2006 - seven months before the parties signed the Settlement Agreement. (Opp. at 8.) After the parties executed the Settlement Agreement, the County avers that it again contacted Mr. Davis in January 2007, in an attempt to move the project forward. (*Id.*) From that point, it appears that the County and Mr. Davis exchanged phone calls and email messages from March through May 2007, discussing such issues as Mr. Davis's written proposal for the project, the Independent Contractor Agreement that Mr. Davis needed to sign, and the requirement that he provide proof of insurance. (*Id.*; Dkt. #272, "Declaration of Timothy Fox in Response to Motion for Enforcement," Ex. G.) The County explains that, after May 16, 2007, Mr. Davis did not respond to its calls or email. (Opp. at 8-9.) Thereafter, in October 2007, the County states that it advised Plaintiffs' counsel that Mr. Davis was not responding to the County's efforts. (*Id.* at 9.) According to the County, at that point, Plaintiffs indicated that they would accept any independent building permit official. (*Id.*) Accordingly, the County contacted two other potential candidates, one of which the County began making arrangements with to work on the project. (*Id.*) However, in December 2007, Mr. Davis contacted the County and expressed willingness to perform the work. (*Id.*)

With respect to issuance of the permits, it is undisputed that since Plaintiffs filed their Motion, the County has issued the environmental health and building permits. Specifically, in the parties' December 4, 2008 Joint Status Statement, the County indicated that, at that point, the Third Parties had completed their review of the permit applications, performed inspections of the property, and issued written reports documenting their findings. (Dkt. #291.) However, because neither report gave the County instructions regarding issuance of the permits, and the Settlement Agreement vested decision-making authority in the Third Parties, the County requested that the Third Parties expressly indicate whether to issue permits for two structures that were no longer on Plaintiffs' property. (*Id*. at 3-4.) Subsequently, in the parties' January 22, 2009 Joint Status Statement, the County indicated that the five building permits that Mr. Braun signed in court on December 11, 2008 had been issued. (Dkt. #296.) It further indicated that the Third Party issued a supplemental report on December 15, 2008, instructing the County to issue environmental health permits for the well and septic system on Plaintiffs' property. (*Id*. at 2.) Because the County has now issued the environmental health and building permits that are the focus of paragraph 6 of the Settlement Agreement, there is no further action on the part of the County pertaining to the permits, or with respect to the Third Parties. The Court therefore DENIES Plaintiffs' request for enforcement of the Settlement Agreement with respect to issuance of the building and environmental health permits for Plaintiffs' property.

The issue then becomes whether Plaintiffs have a claim to damages stemming from the County's conduct in dealing with the Third Parties and issuing the permits. As indicated above,

---

With respect to Ms. Jensen, the County explains that, after Plaintiffs nominated her, issues arose concerning her impartiality because she was a part-time County employee. (*Id*. at 9; Fox Decl., Ex. F.) The County indicates that it contacted Ms. Jensen regarding permit consultant position in January 2007. (*Id*. at 9.) Thereafter, in March 2007, the County confirmed an hourly rate with Ms. Jensen and mailed her a packet of documents that included the Independent Contractor Agreement and a proposed Scope of Work. (*Id*.) However, the County avers that it did not receive a response from Ms. Jensen. (*Id*.) The County sent a follow-up email in May, inquiring about the status of insurance that would cover her consultant work. (*Id*.) According to the County, Ms. Jensen finally obtained the insurance in September 2007, and she delivered proof of insurance to the County the following month. (*Id*. at 10.) The County, however, discovered that the proof of insurance was incomplete, so it emailed and called her in late October about this issue. (*Id*.) The County avers that Ms. Jensen did not respond. (*Id*.)

Plaintiffs argue that the County inexcusably delayed in contacting the Third Parties and obstructed them from beginning their decision-marking process concerning issuing permits for the structures on Plaintiffs' property. The County, on the other hand, maintains that it diligently communicated with both Ms. Jensen and Mr. Davis, and that any delay stemmed from the Third Parties' lack of communication and difficulties meeting the requirements to perform the work. After carefully considering the parties' positions on this issue and thoroughly reviewing the documents the parties have submitted in support, the Court is unpersuaded by Plaintiffs' argument. Particularly, reviewing the correspondence between the County and the Third Parties rebuts Plaintiffs' charge that the County strategically held up the Third Party review either by not communicating with the Third Parties or imposing unnecessary prerequisites on their work. The Court therefore finds no basis to award damages to Plaintiffs in connection with the issuance of the permits.

**D.    Coastal Development Permit**

Plaintiffs next contend that the County failed to issue a CDP in accordance with the Settlement Agreement. Paragraph 9, subparts (a) through (d), set forth the County's obligations with respect to issuing a CDP, and provide:

> 9.  a) On behalf of the Releasees, the County of San Mateo will approve a "property-wide" Coastal Development Permit for the parcel number of the Braun ranch, conforming to the requirements of the County's Local Coastal Program, and any associated use permit, for a wireless antenna site on the Releasor's property located at 1589 Higgins Canyon Road, Half Moon Bay, California, within ninety (90) days of the effective date of this Settlement Agreement.
>
> b)  The "property-wide" Coastal Development Permit will identify as broadly as possible those areas on the property where the wireless antenna site may or may not be located. The Coastal Development Permit will not limit the number of antennae that could be placed on the antenna structure at the site.
>
> c)  Nothing in this Agreement shall be construed to prevent the Releasors or any other person or entity from applying for and/or being granted a Coastal Development Permit or building permit for additional wireless facilities on the Releasors' property at any point in the future.
>
> d)  Nothing in this Agreement is intended to provide any party, including any third party, with any right to appeal to any regulatory body the granting of the Coastal Development Permit pursuant to this

> Agreement. Whether such right to appeal exists is disputed by the parties and should be determined in accordance with established laws and regulations independent of this Agreement. Releasees shall not directly or indirectly take any such appeal or cause or support directly or indirectly any third party to take such an appeal.

(Yamauchi Decl., Ex. B at 4-5.) It is undisputed that the County issued a CDP for Plaintiffs' property at a County Board of Supervisors meeting on January 23, 2007. (Fox Decl., Ex. B.) The County, therefore, contends that it fully satisfied its obligations under the Settlement Agreement relating to the CDP. Plaintiffs, however, argue that the Settlement Agreement requires the County to issue a *non-appealable* CDP. Because the California Coastal Commission appealed the CDP that the County issued, Plaintiffs argue that the County is in breach of the Settlement Agreement. The Court disagrees.

First, contrary to Plaintiffs' contention, the requirement that the County issue a "non-appealable" CDP does not appear anywhere in the language of the Settlement Agreement. Nevertheless, Plaintiffs argue that their "intent, as expressed by them during the Settlement Conference with Magistrate Judge Zimmerman, throughout multiple communications among County Counsel and Plaintiffs' Counsel, and in the written Settlement Agreement itself, was for the CDP to be issued in a manner in which it would not be subject to appeal by any third party." (Mot. at 9.) Pursuant to California law, the parties objective intent, as evidenced by the language of the contract, rather than the subjective intent of one of the parties, controls interpretation of the contract. *See Cedars-Sianai Med. Ctr. v. Shewry*, 137 Cal. App. 4th 964, 980 (Cal. App. 2006). Looking at the plain language of the Settlement Agreement, paragraph 9, subparts (a) and (b) expressly lay out the requirements for the CDP that the County was to issue. Neither subpart (a) or (b) states that the CDP had to be "unappealable." Concurrently, paragraph 9 subpart (d) directly addresses issues relating to an appeal of the CDP, including acknowledging that the parties disagreed over whether a right to appeal existed. While subpart (d) indicates that the Settlement Agreement does not create any right to appeal the CDP - either in the parties or a third party - and additionally prohibits the County from appealing or assisting a third party in appealing the CDP, nothing in subpart (d) requires the County to issue an unappealable CDP. Thus, whatever Plaintiffs' subjective intent, the

plain, objective language of the Agreement does not evince any requirement that the County had to issue an unappealable CDP. Plaintiffs are therefore seeking to impose a requirement on the County that does not exist in the language of the Agreement.

Further, as the County points out, any requirement that the County issue a non-appealable CDP would run up against California law providing for appeal of a CDP such as the one issued in this matter. The County explains that, pursuant to California Public Resources Code § 30603(a)(4)[5], the California Coastal Commission has appellate jurisdiction when a project is a not a "principally permitted use" in its zoning district. (Opp. at 5.) Thus, the County asserts that the parties could not have contracted to divest the California Coastal Commission of its jurisdiction over the CDP. Plaintiffs proffer no response as to how their private contract could override California law regarding third party appeals of the CDP, or otherwise restrict the Coastal Commission's authority to appeal the CDP. Consequently, the Court finds that Plaintiffs argument that the CDP had to be non-appealable fails for this reason as well.

In their Reply, Plaintiffs shift the focus of their argument relating to the CDP and contend that, in approving a deficient CDP, the County failed to comply with the Settlement Agreement. Specifically, they assert: "in Plaintiffs' view, the County approved a CDP that did not contain a project description as required to conduct an Environmental Impact Report under the California Environmental Quality Act in compliance with the Local Coastal Plan." (Reply at 3-4.) Further, Plaintiffs argue that, because the County acted without a CDP application from them, they never had an opportunity to state a project description to avoid a Coastal Commission appeal or any other

---

[5]Section 30603(a)(4) provides:

> (a) After certification of its local coastal program, an action taken by a local government on a coastal development permit application may be appealed to the commission for only the following types of developments:
> []
> (4) Any development approved by a coastal county that is not designated as the principal permitted use under the zoning ordinance or zoning district map approved pursuant to Chapter 6 (commencing with Section 30500).

appeal. They assert that Mr. Braun notified County Counsel of these violations via email two weeks before the Board appealed the CDP, but the County neither responded nor changed its course of action. (Reply. at 4.) The Court, however, is unconvinced by Plaintiffs' arguments. Specifically, Plaintiffs have not presented any evidence suggesting that the County intentionally or even negligently approved a defective CDP in an effort to encourage an appeal. In fact, examining the email from Mr. Braun to the County which Plaintiffs proffer in support of their argument reveals that Mr. Braun previously took the position that "[t]he Settlement Agreement does not call for the Oscar A. Braun Trust to apply for a CDP application within ninety (90) days of the effective date. The Settlement Agreement requires the County of San Mateo to issue a property wide CDP within 90 days of signing the [A]greement." (*See* Dkt. #274, "Declaration of Brad Yamauchi in Support of Reply," Ex. G.) The Court therefore rejects this argument as a basis to find that the County breached the Settlement Agreement.

In sum, the Court finds that the County complied with its obligation to approve a CDP in accordance with the terms of the Settlement Agreement. Accordingly, the Court **DENIES** Plaintiffs' Motion for Enforcement with respect to this issue.

**E.  Rural Incorporation Feasibility Study**

Paragraph 10 of the Settlement Agreement provides:

> 10. On behalf of the Releasees, the Board of Supervisors of the County of San Mateo will authorize and pay for a study to be conducted by the County Controller, Tom Huening, to determine the feasibility of incorporating the rural and unincorporated areas of San Mateo County as delineated by Exhibit A "Proposed Coastal Rural Lands Incorporation Area."

In their Motion, Plaintiffs contend that the County failed to initiate a feasibility study in accordance with paragraph 10. The County, however, argues that it fully complied with this provision. The Court agrees with the County.

As the County points out, Controller Huening began the process of conducting the study in November 2007, when he issued a Request for Proposals for the rural incorporation study. After reviewing the proposals he received, Controller Huening hired a consulting firm, Winzler & Kelly,

to perform the study. On June 20, 2008, Winzler & Kelly issued a written report to Controller Huening entitled, "Initial Feasibility Study." (*See* Dkt. #279, Ex. A.) The County contends that, at this point, the County had rendered full performance of its obligations under paragraph 10 of the Settlement Agreement. The Court agrees.

Nevertheless, in their Reply, Plaintiffs argue - for the first time - that the Settlement Agreement requires *Controller Huening* to conduct the feasibility study, not a third party. (Reply at 4.) Plaintiffs contend that, "[i]f it was the intent of the parties to delegate this action to a third party consultant or contractor, specific language would be in the Settlement Agreement in the same manner and language as the Agreement states with respect to 'Third Party' consultants hired to review the environmental health and building permit process." (Reply at 4.) Plaintiffs' argument misses the mark. Contrary to Plaintiffs' characterization, Controller Huening retained control over the feasibility study, including issuing requests for proposals, reviewing the requests, hiring Winzler & Kelly, and reviewing the written study that was issued. Nothing in paragraph 10 prescribed the manner in which Controller Huening was to conduct the study or otherwise restricted the resources he could utilize to complete the task. Thus, Controller Huening's decision to hire external experts to undertake the field world of the study was within his discretion and did not invalidate the resulting feasibility study.

In sum, having found that the County complied with its obligations relating to the rural incorporation feasibility study , the Court **DENIES** Plaintiffs' Motion for Enforcement with respect to this issue.

**F.      Damages and Other Requested Relief**

In their Motion, Plaintiffs request that the Court specifically enforce the terms of the Settlement Agreement that the County has failed to comply with and award Plaintiffs damages stemming from the County's breaches of the Agreement. Plaintiffs also seek an order finding the County in contempt and requiring the County to show cause as to why it has not complied with the Settlement Agreement. As set forth above, because the Court finds that the County satisfied its obligations under the Settlement Agreement, there is no basis to support Plaintiffs' requests for

specific performance and no basis to support an award of damages.  The Court therefore **DENIES** Plaintiffs' requests.  For the same reasons, the Court further **DENIES** Plaintiffs' request for fees and costs.

### IV.  CONCLUSION

For the reasons set forth above, the Court hereby **DENIES** Plaintiffs' Motion for Enforcement of Settlement Agreement (Dkt. #268) in its entirety.

Further, because the material terms of the Settlement Agreement have been satisfied, the Court declines to retain continuing jurisdiction over the Settlement Agreement.  *See Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265, 1268-69 (9th Cir. 1996).

**IT IS SO ORDERED.**

Dated: March 25, 2009

MARIA-ELENA JAMES
United States Magistrate Judge